IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 17-00009-01-CR-W-DGK |
| DEVION L. WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION TO
## DENY DEFENDANT'S MOTION TO SUPPRESS

Before the Court is Defendant's Motion to Suppress Evidence. Defendant moves the Court to suppress evidence obtained from the July 7, 2016 vehicle search. For the following reasons, Defendant's motion should be denied.

### I.   BACKGROUND

An indictment was returned on January 10, 2017, charging Defendant with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Defendant filed a motion to suppress (Doc. No. 18) and the government responded (Doc. No. 21). An evidentiary hearing was held on July 6, 2017. The government appeared by Assistant United States Attorney Joe Marquez. Defendant was present, represented by retained counsel John Osgood. The government called the following witnesses to testify: (1) Kansas City, Missouri Police Department Officer Justin Palmer; (2) Kansas City, Missouri Police Department Detective Brian Tomanio; and (3) Kansas City, Missouri Police Department Officer Warner Stumpenhaus. Andela Turner testified on behalf of Defendant. The following exhibits were admitted into evidence:

1

|                       |                                                                 |
|-----------------------|-----------------------------------------------------------------|
| Defendant's Exhibit 1: | Audio dispatch of incident;                                    |
| Defendant's Exhibit 2: | Cell phone video of incident;                                  |
| Defendant's Exhibit 3: | Photo of 2016 Dodge Challenger;                                |
| Defendant's Exhibit 4: | Photo of Dodge Charger Hellcat;                                |
| Defendant's Exhibit 5: | Kansas City, Missouri Police Department Dispatch Timeline;     |
| Defendant's Exhibit 6: | Photo of 5342 Brooklyn, Kansas City, Missouri; and            |
| Defendant's Exhibit 9: | Excelsior Springs Police Department Inclusive Case Report.     |

Upon request, the following exhibits were submitting following the suppression hearing:

|                    |                                                             |
|--------------------|-------------------------------------------------------------|
| Court's Exhibit 1: | Sample of hot sheet by make of vehicle;                    |
| Court's Exhibit 2: | Sample of hot sheet alphabetically by license plate number; and |
| Court's Exhibit 3: | Transcript of audio recording of dispatch call.            |

(Doc. No. 32).

## II. EVIDENCE

On the basis of the evidence presented at the suppression hearing and submitted afterward, I submit the following findings of fact.

1.     On July 7, 2016, Kansas City, Missouri Police Officer Justin Palmer was on duty (Tr. at 3-4). That morning, Officer Palmer printed three different hot sheets which listed automobiles that had been stolen in the Kansas City metropolitan area within the last thirty days (Tr. at 4, 10-11).

2.     The hot sheets listed the stolen vehicles by make, model and year; it did not include any special effects, such as racing stripes (Tr. at 11, 25). The model of the vehicle is denoted with an abbreviation (Tr. at 20; see also Ct. Exhs. 1, 2). Officer Palmer testified the abbreviation for a Dodge Challenger was either "CHL" or "CHR" and the abbreviation for a Dodge Charger was either "CHA" or "CHR" (Tr. at 20).

3.     After reviewing the hot sheets, Officer Palmer canvassed areas where he had previously recovered stolen automobiles (Tr. at 4). Upon locating a stolen purple Dodge

2

Challenger parked in front of the residence at 5210 Euclid, Officer Palmer began to conduct surveillance and requested additional undercover resources (Tr. at 4-6).

4.        Kansas City, Missouri Police Department Detectives Tomanio and Storms responded to the scene (Tr. at 6, 36-37).   Officer Palmer advised Detective Tomanio that there had also been a red Dodge Challenger stolen with the purple Challenger (Tr. at 37).   Officer Palmer then moved his vehicle to 53rd and Euclid so that both surveillance vehicles were not on the same block (Tr. at 7).

5.        While conducting surveillance, Detective Tomanio observed a red Dodge Challenger pull up directly next to the stolen purple Dodge Challenger, tap its brakes and stop briefly, then proceed southbound on Euclid (Tr. at 7, 38).   There were no children in the street and no one got in or out of the red Dodge Challenger (Tr. at 38).   The windows of the red Dodge Challenger were tinted, so he could not see inside (Tr. at 44).   Detective Tomanio believed the red Challenger to be the other stolen automobile and advised Officer Palmer (Tr. at 7, 37-38).

6.        Officer Palmer knew the purple Dodge Challenger had been stolen from a dealership in Excelsior Springs, Missouri (Tr. at 5).   When Officer Palmer heard about the red Dodge Challenger, he believed it had also been stolen from the Excelsior Springs dealership based on the hot sheet he had reviewed (Tr. at 7-8).   Neither Officer Palmer nor Detective Tomanio had ever seen the Excelsior Springs Police Department's stolen automobile report (Tr. at 20, 38).

7.        Officer Palmer was mistaken in his belief that a red Dodge Challenger had also been stolen from the dealership in Excelsior Springs (Tr. at 13, 14, 15).   In fact, it was a red Dodge Charger that had been stolen (Def. Exh. 9).   Officer Palmer testified he had read the hot

3

sheet incorrectly (Tr. at 15).

8.      Officer Palmer told Detective Tomanio he believed the red Dodge Challenger was stolen and wanted to conduct surveillance on the vehicle (Tr. at 8).   Officer Palmer followed the red Dodge Challenger until it pulled into the driveway at 5342 Brooklyn (Tr. at 8).   He could not see who was inside the vehicle because the windows were tinted (Tr. at 9).

9.      Officer Palmer called for some marked units (Tr. at 8).   Once the marked cars responded to the scene, Officer Palmer drove by the vehicle again and observed a black male, leaning inside the driver's seat toward the middle console (Tr. at 9).   Officer Palmer told the marked units it was the safest time to do a car check since the car was stationary (Tr. at 10).

10.     Kansas City, Missouri Police Officers Stumpenhaus and Kartman responded to 5342 Brooklyn in a marked patrol vehicle (Tr. at 48).   Officer Stumpenhaus got out of his patrol vehicle with his gun drawn and gave Defendant and Derron Love, who were standing outside the red Dodge Challenger, verbal commands and placed them in handcuffs for officer safety (Tr. at 47-49).   Officer Stumpenhaus testified he was trained at the academy to conduct a felony car check in this fashion (Tr. at 61).

11.     An individual named "Terrence Jackson" was standing on the front porch, ran inside and then came back outside (Tr. at 53).   Officer Stumpenhaus placed Mr. Jackson in handcuffs for officer safety (Tr. at 53).

12.     Officer Stumpenhaus ran the red Dodge Challenger's VIN and found it was not stolen and that there was no record on it (Tr. at 19, 49).

13.     A license plate check also revealed that the vehicle has not stolen (Tr. at 31-32).

14.     At least four other police officers showed up at 5342 Brooklyn (Tr. at 48).

15.     Minutes later, Officer Kartman noticed a plastic baggie containing an off-white,

4

powder-like substance on the ground near Mr. Love (Tr. at 50, 54). Officer Stumpenhaus believed it to be powder cocaine (Tr. at 50). Officer Owens noticed a plastic baggie containing a green, leafy substance and another plastic baggie containing an off-white, rock-like substance by a trash can near Mr. Love (Tr. at 50). Officer Stumpenhaus believed the green substance to be marijuana and the rock-like substance to be crack cocaine (Tr. at 50-51).

16.     Officers Stumpenhaus and Owens observed a Glock 22 handgun on the passenger's seat of the red Dodge Challenger in plain view (Tr. at 51). Officer Stumpenhaus ran the serial number on the firearm and learned it was a stolen firearm from Belton, Missouri (Tr. at 52).

17.     The officers tried to determine to whom the car belonged (Tr. at 52). Individuals standing on the front porch of 5342 Brooklyn stated they did not know whose car it was (Tr. at 52, 60-61).

18.     Officers decided to tow the red Dodge Challenger due to the stolen firearm that had been located inside the car and the fact that they were unable to determine who its owner was (Tr. at 53).

19.     An inventory search was performed before towing the car (Tr. at 53). A second firearm was located wedged between the front driver's seat and the center console (Tr. at 54).

### III.     LEGAL ANALYSIS

Defendant seeks suppression of evidence obtained as a result of the July 7, 2016, search on grounds of Fourth Amendment violations. He specifically contends that law enforcement did not have reasonable suspicion to conduct a car check and further lacked probable cause to search the vehicle after determining it was not stolen. I disagree.

5

The Fourth Amendment prohibits unreasonable searches and seizures. "Law enforcement officers may make an investigatory stop if they have a reasonable and articulable suspicion of criminal activity." United States v. Hightower, 716 F.3d 1117, 1119 (8th Cir. 2013)(quoting United States v. Bustos–Torres, 396 F.3d 935, 942 (8th Cir. 2005)). "A reasonable suspicion is a 'particularized and objective' basis for suspecting [criminal activity by] the person who is stopped." Id. at 1119-20. "Whether the particular facts known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances." Id. at 1120 (internal quotation marks omitted). A mistake of fact, if objectively reasonable, may still justify a valid stop. United States v. Hollins, 685 F.3d 703, 705-06 (8th Cir. 2012).

In this case, Officer Palmer believed that the red Dodge Challenger had been stolen from the dealership in Excelsior Springs, Missouri. This belief was based on his review of hot sheets that morning which listed stolen automobiles in the Kansas City area. Although this belief was supported by a misreading of the hot sheets, I find this mistake to be objectively reasonable. The hot sheets do not contain the full model name of the stolen automobiles; rather, the model name is denoted by an abbreviation. The difference between the abbreviation for a Dodge Charger and a Dodge Challenger is a single letter. This belief, coupled with the fact that the red Dodge Challenger stopped briefly next to the purple Dodge Challenger which had been confirmed to have been stolen, gives rise to reasonable suspicion.[1]

---

[1] Although Defendant argues that it is not unusual for individuals to stop and look at an exclusive car, this argument is misplaced based on the facts of this case. This case involves two separate Dodge Challengers. Both in the motion to suppress and in questions asked during the suppression hearing, defense counsel mistakenly referred to the purple stolen Dodge as a "Charger" (See Tr. at 15-17, 65-67). The stolen purple automobile was, in fact, a Dodge Challenger (valued at $45,465.00) rather than the more expensive Dodge Charger Hellcat (valued at $71,020.00) (See Def. Exh. 9). Even so, there are no facts in the record before me to support the general proposition that it is common for individuals to slow down while driving to look at a more expensive, exclusive

Shortly after arriving at 5324 Brooklyn, law enforcement observed substances they believed to be marijuana, powder cocaine and crack cocaine near Mr. Love. Officer Stumpenhaus was thus justified in recovering the firearm that he observed in plain view on the passenger seat of the red Dodge Challenger. See United States v. Hughes, 940 F.2d 1125, 1126 (8th Cir. 1991)(holding law enforcement had probable cause to associate gun in vicinity of illegal drugs with criminal activity). Officer Stumpenhaus ran the firearm's serial number and discovered it to be stolen. Due to the stolen nature of the firearm and the fact that they were unable to determine who the vehicle's owner was, law enforcement decided to tow the red Dodge Challenger. Officers were lawfully permitted to perform an inventory search before doing so. See United States v. Garreau, 658 F.3d 854, 857 (8th Cir. 2011). The firearm found between the driver's seat and center console should, accordingly, not be suppressed.

## IV.   CONCLUSION

For the above-stated reasons, it is

RECOMMENDED that the Court, after making an independent review of the record and the applicable law, enter an order denying Defendant's motion to suppress.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has fourteen days from the date of this report and recommendation to file and serve specific objections to the same, unless an extension of time for good cause is obtained. Failure to file and serve timely specific objections may result in waiver of the right to appeal factual findings made in the report and recommendation which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

---

automobile.

Defendant's suggestion that law enforcement decided to perform a car check on the red Dodge Challenger because the occupants were "young black males" is similarly misplaced as the vehicle's tinted windows prevented officers from seeing who was inside (See Tr. at 9, 44).

7

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
August 7, 2017

Case 4:17-cr-00009-DGK    Document 33    Filed 08/07/17    Page 8 of 8